In the Matter of Burton Norris **RICKEY**, Debtor.

**SUN BANK AND TRUST COMPANY OF ST. PETERSBURG, Plaintiff,**

v.

**Burton Norris RICKEY, Defendant.**

**Bankruptcy No. 80–961 C.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Jan. 30, 1981.

Burton Norris Rickey, pro se.

Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for Sun Bank & Trust Co. of St. Petersburg.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a contested discharge proceeding initiated by Sun Bank and Trust Company of St. Petersburg (the Bank), the plaintiff who filed this adversary proceeding. The Bank seeks a determination that the debt owed to the Bank by Burton Norris Rickey, (the Debtor) involved in the above-captioned Chapter 7 proceeding shall be declared to be non-dischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code. The Bank also seeks the entry of a money judgment pursuant to Bankruptcy Rule 409. The evidence as developed at the final evidentiary hearing reveals the following:

The Debtor is an attorney at law admitted to practice in this State since 1968 and is currently employed as an assistant city attorney by the City of St. Petersburg, Florida. At the time pertinent to this transaction, he was in private practice and

apparently in need of funds to maintain his practice. The Debtor approached the Bank in February of 1980 and sought a loan in the amount of $2,000. Prior to granting the loan, he was furnished by the Bank officer a document entitled "Application for Installment Loan" (Pl's. Exh. # 2) and a document entitled "Personal Financial Statement" consisting of four (4) pages. Although it is not clear, it appears that the Debtor filled out the Personal Financial Statement shortly after he was handed the same and after having completed the document, presented it to the loan officer who shortly thereafter approved the loan in the amount of $2,000 and the Debtor received $2,000 after signing a promissory note in the same amount. The loan officer who handled this transaction had authority to grant unsecured loans in this amount without approval of another officer or a loan committee. The Personal Financial Statement indicates in the asset column under real estate that the Debtor is the sole owner of real property valued at $60,000. This column refers to Schedule # 5, part of the same exhibit where the borrower is required to state that the legal and equitable title to all the real estate listed in the statement is solely in the name of the undersigned. Schedule # 5 is left blank indicating again that the real property in question was owned solely by the Debtor. The Personal Financial Statement also indicates that the Debtor was a co-owner of certain securities in the amount of $30,000 listed by him in column 7 of the Personal Financial Statement. This column also refers to a supplementary Schedule # 4 which indicates that the securities referred to were supposed to be Certificates of Deposit in the Clearwater Federal Savings & Loan registered in the name of the Debtor and one Margaret Fulton who turned out to be the mother of the Debtor.

There is no question that the real property in question was owned at all times by the Debtor and his wife as tenants by the entireties and was never solely owned by the Debtor himself. It is equally without dispute that the Debtor has never seen the Certificates of Deposit and the only rational basis to state that he had some interest in the Certificates of Deposit was an alleged statement made to him by his mother that she placed his name on the Certificates for the purpose of assuring that in the event she dies, the Debtor will automatically acquire the Certificates of Deposit without the necessity of going through a probate proceeding. There is hardly any doubt that the Debtor knew at the time he filed the Personal Financial Statement that he had no present cognizable interest in the Certificates. The Debtor did not make any independent investigation as to whether or not the Certificates of Deposit were in existence or whether or not his name appeared as a co-owner. The Debtor offered no explanation why he listed the real property as solely owned by him and concerning the alleged ownership of the Certificates of Deposit he stated that he relied solely on his mother's statement. In addition, he claims that he was assured that the Personal Financial Statement was merely a formality and the loan was granted to him solely based on his good credit history. The Debtor also, of course, denies that he intended to deceive the Bank.

The claim of non-dischargeability is based on § 523(a)(2)(B) which provides in pertinent part as follows:

§ 523. *Exceptions to Discharge*

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; . . . ."

This Section is an adaptation of § 17(a)(2) of the Bankruptcy Act, and it was modified

by the Code only slightly to the extent that it now requires a reasonable reliance by the lender. This change was inserted in recognition of the pre-Code case law which construed the reliance provision of § 17(a)(2). *House Report 95–595, 95th Cong., 1st Sess. at 363 (1977). Senate Report 95–989, 95th Cong., 2d Sess. at 77–79 (1978), U.S.Code Cong. & Admin.News 1978 p. 5787.*

█ There is no question, and it is quite evident, that the Personal Financial Statement submitted by the Debtor was materially false, at least with regard to his claimed sole ownership interest in the real estate. In addition, there is hardly any doubt that the statement concerning the Certificates of Deposit was equally false. The Debtor who is a practicing attorney is charged with the knowledge of the significance and the importance to truthfully and correctly fill out a financial statement; knew that he had no business listing as one of his assets Certificates of Deposit which he has never seen; which he believed to co-own with his mother solely on the unsupported and uncorroborated statement by her. In this connection, it should also be pointed out and it is noteworthy that his mother who was subject to subpoena and was available to testify to corroborate the Debtor's testimony, was not called as a witness by the Debtor. Under these circumstances, the law presumes that her testimony would have been adverse and that is the reason she was not called. It is a well-settled rule that if a party knows the existence of an available witness on a material issue and such witness is within his control and if without satisfactory explanation he fails to call him, an inference may be drawn that the testimony of the witness would not have been favorable to such party. *Culbertson v. The Steamer Southern Belle*, 59 U.S. (18 How.), 584, 15 L.Ed. 493 (1856); *Southern Cross Steamship Co. v. Firipis*, 285 F.2d 651 (4th Cir. 1960); 29 Am.Jur.2d, *Evidence*, § 180. This is especially true when the witness who was not called by a party and who is available to give relevant testimony is related to the party either by blood or marriage and it is proper to draw an inference that a testimony of such witness would have been unfavorable. Annot.; 5 ALR 2d § 22 at 943.

█ As noted earlier, the Debtor denied that he intended to defraud the Bank. There is no question that the intention to deceive is an indispensable element of a claim of non-dischargeability under § 523(a)(2)(B) just as it was under its predecessor, § 17(a)(2). One cannot x-ray the mental processes of a debtor and direct proof of intent to deceive is well-nigh impossible. However, it is not necessary to furnish direct proof and the fraudulent intent may be inferred from the surrounding circumstances. Thus, it is sufficient to show that a false representation on a financial statement was made with actual knowledge that it was incorrect or it was made with reckless indifference and disregard of the actual facts and without examining the available sources which were readily available and the statement was made without reasonable grounds to believe that the statement was, in fact, correct. *Morimura, Arai & Co. v. Taback*, 279 U.S. 24, 33, 49 S.Ct. 212, 215, 73 L.Ed. 586 (1929).

█ This leaves for consideration whether or not the Bank carried the burden placed on it to establish the element of reasonable reliance. Concerning this element of the claim of non-dischargeability, this Court is satisfied from the totality of the evidence that the Bank did rely on the financial statement and its reliance was reasonable in light of the fact that it had a right to assume that the statement submitted by a professional man was true and correct and the assets listed on the statement played a meaningful role in the decision making process of the Bank when granting an unsecured loan.

█ Accordingly, this Court is satisfied that the Bank did establish with the requisite degree of proof all of the necessary operating elements of a claim of non-dischargeability under § 523(a)(2)(B), therefore, it is entitled to the relief prayed for. Inasmuch as it is admitted that the loan

was never repaid, the Bank is also entitled, of course, to a money judgment based on the obligation's promissory note executed by the Debtor.

A separate final judgment will be entered in accordance with the foregoing.