**In re John T. GRAHAM and Betty D. Graham, Debtors.**

**EAST HARTFORD AIRCRAFT FEDERAL CREDIT UNION, Plaintiff,**

v.

**John T. GRAHAM and Betty D. Graham and Herman S. Hodes, Trustee, Defendants.**

Bankruptcy No. 205–5–80–00932.
Adv. No. 205–5–81–0066.

United States Bankruptcy Court,
D. Connecticut.

June 19, 1981.

Robert M. Levin, Hartford, Conn., for plaintiff.

John C. Kucej, Waterbury, Conn., for defendants.

MEMORANDUM OF OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGE OF DEBT

ALAN H. W. SHIFF, Bankruptcy Judge.

### I. Background

1. The plaintiff is a creditor of the defendant debtors in this Chapter 7 case

---

**9.** Pa.Stat.Ann. tit. 15, § 1408 (Purdon Com. Supp.1978–79).

which was commenced with the filing of a petition on December 19, 1980.

2. The plaintiff's complaint seeks a determination of the dischargeability of two debts pursuant to 11 U.S.C. § 523(a)(2)(B)[1].

3. The debts in question consist of the following:

(a) Promissory note dated October 29, 1979 in the amount of $2,100.00, executed by Betty D. Graham and cosigned by John T. Graham (Plaintiff's Exhibit A).

(b) Promissory note dated March 27, 1980 in the amount of $6,400.00, executed by John T. Graham and cosigned by Betty D. Graham (Plaintiff's Exhibit C).

## II.   Claims

1. The plaintiff claims that—

(a) The defendants submitted credit applications dated October 29, 1979 (Plaintiff's Exhibit B) and March 25, 1980 (Plaintiff's Exhibit D) for the purpose of qualifying for the October 31, 1979 and March 27, 1980 loans.

(b) Those credit applications on which the plaintiff reasonably relied, were materially false, respecting the defendants' financial condition and the defendants made or published those credit applications with the intent to deceive the plaintiff.

2. The defendants have denied all of the material allegations of the plaintiff's complaint.

## III.   Issue

During the course of this trial, the defendants admitted that they executed both credit applications and both promissory notes. They further admitted that both credit applications were materially false, respecting their financial condition, in that neither application disclosed any liability (other than a mortgage) although that information was requested by the plaintiff.

Accordingly, the remaining issues are (1) whether the plaintiff reasonably relied on the credit applications submitted by the defendants and (2) whether the defendants made or published the credit applications with the intent to deceive the plaintiff.

## IV.   Discussion

The plaintiff produced the testimony of John Everin, its assistant credit manager, who stated on direct examination that the defendants completed and signed the credit applications (Plaintiff's Exhibits B & D) for the purpose of obtaining loans (Plaintiff's Exhibits A & C) and that the part of the credit application upon which the plaintiff relied most for a determination of whether or not to extend a loan is the section that calls for a disclosure of liabilities.

Under cross examination, however, Mr. Everin admitted that he did not personally review the applications submitted by the defendants or determine whether the loans in question should be made. In addition, he identified Mr. Dokas as the person who, acting on the plaintiffs' behalf, granted the loans to the defendants.

The plaintiff next produced the testimony of the defendant, John T. Graham, who admitted that he did not disclose the defendants' liabilities on the credit applications, but claimed that the plaintiff knew about their financial condition from "other financial statements", unrelated to credit applications. According to this defendant, "they knew all I owed". He further claimed that he thought the question regarding information about liabilities called for an "update" and "I had no other bills".

In other testimony, however, Mr. Graham stated that he knew that the plaintiff would rely upon his answer to the inquiry regarding his liabilities. He further stated that no one ever told him that he did not have to disclose his liabilities or that the plaintiff waived the requirement to furnish

---

1.   11 U.S.C. Sec. 523(a)(2)(B)
"for obtaining money ... by— ...
(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive;"

that information or would not rely upon the accuracy of the contents of the credit applications.

Mr. Everin was recalled by the plaintiff and testified from the plaintiff's records in his possession that, Mr. Graham never submitted any financial statements that were unrelated to credit applications and that he never listed any liabilities on his credit applications aside from a mortgage. Mr. Everin further stated that all records on Mr. Graham prior to 1973 had been destroyed.

At the conclusion of the plaintiff's case the defendants rested.

Since the defendants denied the material allegations of the plaintiff's complaint regarding the issues before the court, the burden of proof was upon the plaintiff to prove, by a fair preponderance of the evidence, that it relied upon the accuracy of the credit applications submitted by the defendants and that the defendants intended to deceive the plaintiff by submitting materially false representations regarding their financial condition.

### V. Conclusions

■ Based on the evidence presented at the trial and after assessing the credibility of the witnesses, the court concludes that the plaintiff relied upon the accuracy of the credit applications submitted by the defendants and that the defendants intended to deceive the plaintiff by submitting materially false credit applications.

Having put in evidence credit applications which required a disclosure of the defendants' financial condition (Plaintiff's Exhibits B & D) and having offered testimony that the section regarding liabilities was the most significant part of an application for a loan, the burden of going forward with the evidence shifted to the defendants to prove that, in this particular case, the liability section in the credit applications was not relied upon.

The defendants, however, offered no evidence in that regard aside from cross examining the defendant John T. Graham. In that connection, it is interesting to note that during part of the cross examination of the defendant, John T. Graham, by his attorney, Mr. Graham admitted that he was never told not to fill out the section relating to his liabilities. No attempt was made to cross examine Mr. Everin regarding the existence of the "other financial statements" which allegedly put the plaintiff on notice of the defendants' other liabilities. The defendants didn't even request an opportunity to examine their records in Mr. Everins possession. Furthermore, it should be pointed out that during the direct examination of Mr. Graham, he couldn't remember when he last submitted any such "other financial records" to the plaintiff.

It is difficult to follow the defendants' logic which suggests that the plaintiff relied upon those so called "other financial statements" to ascertain the extent of any outstanding liabilities, but that the plaintiff ignored and did not rely upon the financial statements (credit applications) submitted by the defendants for the purpose of obtaining the loans in question.

The court is entitled to draw logical and reasonable inferences from the facts established in evidence. It is in evidence that the credit application form included a request for the disclosure of liabilities because the plaintiff wanted that information in order to evaluate the prudence of granting a requested loan. It therefore is reasonable to infer that in this case the defendants were requested to complete the credit applications, including the sections relating to liabilities, so that their loan applications could be evaluated.

Hearing no credible evidence to suggest a contrary finding, the court concludes that the plaintiff relied upon the materially false financial statement submitted by the defendants in making the loans evidenced by plaintiff's Exhibits A & C.

■ Although intent to deceive is a critical link in the chain of proof required to successfully challenge the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(B), it is not necessary to read the minds of these defendants in order to furnish such proof. Proof of fraudulent intent may be inferred from the surrounding circumstances. *In re Rickey*, 8 B.R. 860 (Bkrtcy.M.D.Fla.1981).

The credit applications called for explicit information regarding the defendants' lia-

bilities. The defendants were asked to disclose with respect to "liabilities (what you owe)", to whom the debt was owed, the address of the creditor, and the account number, original amount, monthly payment, and unpaid balance. The defendants left the space blank, with respect to liabilities, in the October 29, 1979 credit application (Plaintiff's Exhibit B), and they wrote the word "none" in the March 25, 1980 credit application (Plaintiff's Exhibit D). As stated above, there is no question but that the credit applications were materially false with respect to the disclosure of the defendants' financial condition.

Since the false representations on the financial statements (credit applications) submitted by the defendants were made with actual knowledge that they were incorrect, the court concludes that those false representations were intended to deceive the plaintiff. *In re Rickey*, supra, 8 B.R. at 863. The claim by the defendant John T. Graham that he did not disclose the true state of his financial condition on the credit applications because the plaintiff supposedly knew all about his financial condition is illogical and contrary to the weight of evidence in this case.

The plaintiff is accordingly entitled to judgment in its favor and a separate final judgment will be entered in accordance with the foregoing.