**In re Rene RODRIGUEZ, Debtor.**

**LONG ISLAND TRUST COMPANY,**
**Plaintiff,**

**v.**

**Rene RODRIGUEZ, Defendant.**

**Bankruptcy No. 181–12566–260.**
**Adv. No. 181–0567.**

United States Bankruptcy Court,
E.D. New York.

April 13, 1983.

As Amended May 12, 1983.

Krongold & Zwirn, New York City, for debtor/defendant; Gerald Zwirn, New York City, of counsel.

Cullen & Dykman, Garden City, N.Y., for Long Island Trust Co.; Vincent J. Nofi, Garden City, N.Y., of counsel.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Bankruptcy Judge.

This is an adversary proceeding brought by the plaintiff, Long Island Trust Company, (hereinafter LIT), pursuant to 11 U.S.C. § 523(a)(2)(B) to declare a debt owed to it by the defendant/debtor, Dr. Rene Rodriguez, nondischargeable in bankruptcy. The issue before this court is whether a debt due to a creditor can be deemed nondischargeable if it relied on a false financial statement given by the debtor to the creditor's assignor. During the course of the trial, the following facts developed.

### I

### FACTS

The defendant/debtor, Dr. Rene Rodriguez, is a physician. In or about January, 1980, Dr. Rodriguez communicated with Mr. Nathaniel Ruskin of Eastern Medical Sales Corporation, a medical equipment supply company, to express an interest in obtaining a business loan. Acting on Dr. Rodriguez' behalf Mr. Ruskin contacted the Macrolease Corporation in the belief that it might be of some assistance to Dr. Rodriguez. Shortly thereafter, Dr. Rodriguez met with Mr. Jerome Gersh, a representative of Macrolease, and an agreement was reached which eventually provided Dr. Rodriguez with the funds that he sought amounting to approximately $25,000.

There is conflicting testimony regarding the actual completion of a financial statement of Dr. Rodriguez required by Macrolease to effectuate the agreement. It is unclear whether it was filled out by Mr. Gersh at Dr. Rodriguez' direction or whether Mr. Gersh himself made decisions as to what should be included in the statement. In any case it is undisputed that Dr. Rodriguez saw the completed statement, was aware of its exact content, and signed it.

There is also conflicting testimony concerning the exact nature of the agreement to provide the funds. It is unclear whether it was intended to be a sale and leaseback of medical equipment already owned by Dr. Rodriguez, or a loan secured by that equipment, or a straight lease of new equipment. There is no conclusive evidence that Dr. Rodriguez ever sold equipment, and yet the agreement is referred to as a lease. There exists a receipt from Eastern to Macrolease reciting that medical equipment was sold to Macrolease by Eastern and delivered to Dr. Rodriguez. However, Mr. Ruskin, Eastern's representative, states that was not true and that he was instructed to issue that receipt by Macrolease. Dr. Rodriguez testified that the only equipment in his possession is equipment that he owned prior to the agreement and he is otherwise unable to characterize the agreement. It is, therefore, abundantly clear that the subject equipment belonged to Dr. Rodriguez even before he entered into the agreement and it is apparently property of his estate, although it is not referred to in the debtor's schedules of assets.

Ultimately, the precise nature of the agreement is not completely relevant to this matter. Whether it was a sale, a lease, or a

secured loan is far less important than the fact that the decision to enter the agreement centered around an allegedly false financial statement of Dr. Rodriguez and that LIT, the assignee of Macrolease, relied on that statement when accepting the assignment of Macrolease's interest.

The financial statement signed by Dr. Rodriguez indicates that he is the sole owner of real property valued at $650,000. In fact, Dr. Rodriguez has admitted the property was transferred to his wife some time prior to the preparation and signing of the statement. At the same time that Dr. Rodriguez signed the statement he also signed a document allowing Macrolease to assign its interest in the loan. Macrolease in fact assigned its interest almost immediately thereafter to LIT who accepted the assignment based primarily on the strength of the financial statement. LIT also checked on Dr. Rodriguez' credit standing by contacting credit checking agencies. Mr. Rodney Williams, an assistant secretary of LIT, testified that this was consistent with the normal practices of the bank. He further testified that the bank would not have accepted the assignment nor made the advance if it had known that Dr. Rodriguez did not own the property in question. As a result of this reliance on the financial statement, LIT accepted the assignment of the agreement and advanced the funds to Macrolease which in turn paid them over to Eastern which ultimately paid them to Dr. Rodriguez. It now seeks to bar the discharge of the debt pursuant to 11 U.S.C. § 523(a)(2)(B). We agree with the position of LIT and find the subject debt nondischargeable in bankruptcy.

## II

## DISCUSSION

A debtor may be denied a discharge of a debt incurred because of a false financial statement. 11 U.S.C. § 523(a)(2)(B) provides:

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

\* \* \* \* \* \*

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

The creditor seeking nondischargeability of a debt has the burden of proving each element of the above section. The appropriate standard of proof necessary to satisfy this burden is by a showing of clear and convincing evidence. *In re DeRosa,* 20 B.R. 307, 311 (Bkrtcy.S.D.N.Y. 1982); *Matter of Newmark,* 20 B.R. 842, 853 (Bkrtcy.E.D.N.Y.1982); *In re Magnusson,* 14 B.R. 662, 667, 8 B.C.D. 708 (Bkrtcy.N.D. N.Y.1981); *In re Brian K. Callery,* 6 B.R. 527, 529 (Bkrtcy.S.D.N.Y.1980). The court finds that the plaintiff has satisfied this burden and standard. Accordingly, the obligation of the debtor to the plaintiff is deemed nondischargeable.

The following is a discussion of the above elements.

### A. *Materiality*

The debtor issued a financial statement that was materially false. A "materially false" statement sufficient to render a debt nondischargeable means a substantial or important untruth. *Magnusson, supra; In re Tomeo,* 1 B.R. 673, 676 (Bkrtcy.E.D. Pa.1979). What is substantial is always a question of fact. An understatement of a debtor's liability by approximately 25 per cent, *Magnusson, supra,* as well as an overstatement by $12,000 of the value of real property owned by the debtor, *In re Voeller,* 14 B.R. 857 (Bkrtcy.D.Mont.1981), have both been held to be material misrepresentations sufficient to bar a discharge. In

another case, *In re Valley,* 21 B.R. 674 (Bkrtcy.D.Mass.1982), an error in the valuation of a home which increased the debtor's net worth by $15,000 was also deemed material. The misstatement on Dr. Rodriguez' financial statement exceeds the aforementioned parameters by a wide margin. That statement indicated that he owned $650,000 in real property that in fact had been transferred to the sole ownership of his wife sometime prior to the preparation of the statement. That sum represented 75 per cent of the value of all assets listed on the statement. Clearly, that is materially false.

### B. *Debtor's Financial Condition*

Nothing more can plainly relate to the debtor's financial condition than a statement regarding the value of his assets. Thus, Dr. Rodriguez' statement regarding the subject property satisfies the second element required for a finding of nondischargeability.

### C. *Reliance*

■ A materially false statement regarding a debtor's financial condition will not be a bar to discharge unless it was reasonably relied on by a creditor. 3 *Collier on Bankruptcy,* Para. 523.09[4] at 523–59 (15th Ed. 1981). The court finds that the creditor, LIT, reasonably relied on Dr. Rodriguez' financial statement.

■ LIT accepted assignment of Macrolease's agreement with Dr. Rodriguez primarily on the strength of Dr. Rodriguez' financial statement. A representative of the bank has testified that such transactions are usual and that it was the normal practice of the bank to place heavy reliance on the contents of the financial statement in such situations. It was further stated that had LIT been aware of the falsity of the statement they would not have accepted the assignment. Such reliance is reasonable in the banking industry, particularly when the provider of the financial statement is a professional person such as Dr. Rodriguez. *Matter of Rickey,* 8 B.R. 860 (Bkrtcy.M.D.Fla.1981).

■ LIT's claims of reasonableness are given added support by evidence that it sought data on Dr. Rodriguez' credit history from various credit reporting firms. The fact that LIT may have relied on other sources, such as these credit reporting firms, does not necessarily mitigate against a finding of reliance. Partial reliance on a false financial statement is often adequate to render a debt nondischargeable. *In re Tomei,* 24 B.R. 204, 9 B.C.D. 1166 (W.D. N.Y.1982); *Magnusson, supra.* So long as the false financial statement was a substantial factor it is sufficient. *In re Clancy,* 279 F.Supp. 820, 822 (D.Colo.1968), *aff'd.* 408 F.2d 899 (10th Cir.), *cert. denied,* 396 U.S. 958, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969). Inasmuch as LIT's representative has testified that the assignment would not have been accepted but for the financial statement, we find that there was sufficient reliance.

Despite Dr. Rodriguez' argument to the contrary the rights of LIT are not entirely derived from its assignor, Macrolease. While it is generally true that an assignee has no greater rights than its assignor, *In re Pearlwick,* 15 B.R. 143 (Bkrtcy.S.D.N.Y. 1981), it is not necessarily that simple or direct an issue. Dr. Rodriguez knew when he signed the subject financial statement that an assignment of Macrolease's interest was possible. From that fact it can logically be inferred that any future assignee would ask to examine that financial statement before accepting the assignment. In doing so such an assignee would not necessarily possess the means for discovering that the statement was false. It would be manifestly unfair to deprive such an assignee of the right to take exception to the discharge of a debt incurred through a false financial statement that a debtor knew was false when made and which he knew might be relied on by another party, even though he lacked specific knowledge of who that party might be. This is particularly true when the assignee took reasonable steps to verify the accuracy of the statement as LIT apparently did.

If Dr. Rodriguez was unaware of the possibility of an assignment our conclusion might be different, but the simple fact that he was aware removes this situation from the general considerations regarding the rights of assignees and preserves for LIT a right that its assignor, Macrolease, might have forfeited because of its seeming complicity in the preparation of the statement. *See, In re Houk,* 17 B.R. 192 (Bkrtcy.D.S.D. 1982). Accordingly, LIT's role as assignee of Macrolease's interest does not impair its power to object to the discharge of the subject debt.

### D. *Intent*

Dr. Rodriguez has denied that he intended to deceive anyone with his financial statement. He testified that although he was aware of the false contents of the statement he was not responsible for completing it. He did, however, consent to signing it at the behest of Macrolease who then almost contemporaneously arranged to have LIT accept assignment of the agreement. Accordingly, the court finds that Dr. Rodriguez possessed the requisite intent necessary for a finding that his debt to LIT is nondischargeable. This is the final factor which, when considered with the other previously discussed elements permits the court to find the subject debt nondischargeable.

By any one of a variety of standards, Dr. Rodriguez' behavior is sufficient for a finding of requisite intent. First, the mere fact that Dr. Rodriguez knew that his statements were false demonstrates his intent. *Matter of Rickey, supra.* In *Rickey,* the debtor, like Rodriguez, stated that he was the sole owner of real property when he knew in fact that he was not. Rather, it was held in joint tenancy with his wife. As a consequence of this false statement regarding his financial status the subject debt was deemed nondischargeable on that basis alone.

■ Second, if Dr. Rodriguez did not read a statement prepared for him by another party that would, in and of itself, constitute reckless disregard equivalent to intent. *In re Anderson,* 10 B.R. 607 (S.D.

Fla.1981). In *Anderson,* the debtor, a well adjusted man with no physical or mental impairment, had failed to read his financial statement before signing it. As a result, he neglected to include information the creditor would have used to deny credit if such information had been available to it. Consequently, the debt incurred through that statement was deemed nondischargeable. Dr. Rodriguez has suggested that he did not read the financial statement prepared for him by Macrolease. In light of *Anderson,* that is an insufficient basis for absolving him from responsibility. His reckless disregard is the equivalent of intent.

■ Finally, intent can also be inferred from circumstances. Rodriguez knew or should have known that whatever statements he was making or acknowledging by his signature were very likely going to be relied on by one party or another in making a determination regarding his credit worthiness. That has been held to be a basis for a finding of intent, *In re Matter of Gray,* 22 B.R. 676, 9 B.C.D. 661 (Bkrtcy.W.D.Wis. 1982), particularly where the debtor failed to notify the creditor of the falsity. The allegation that Dr. Rodriguez did not disclose the true facts regarding his financial status because he believed they were already known to Macrolease is simply illogical. *In re Graham,* 11 B.R. 701 (Bkrtcy.D. Conn.1981).

### III

### CONCLUSION

The creditor, LIT, has demonstrated to the satisfaction of this court that the debtor, Dr. Rodriguez, made a materially false statement regarding his financial condition upon which LIT reasonably relied in accepting assignment of Macrolease's contract with Dr. Rodriguez and that Dr. Rodriguez made that statement with the intent to deceive.

The precise nature of the arrangement between Macrolease and Rodriguez is not necessarily relevant to this finding. The more general characterization of this as a financing agreement in which some form of

credit was extended to Dr. Rodriguez is all that we need be concerned with at this point. The agreement was entered into largely on the strength of Dr. Rodriguez' financial statement and the statement having been fraudulently and intentionally made renders the debt nondischargeable.

IT IS SO ORDERED.