### In re Christopher C. EVANGELISTA, Debtor.

### CORTLAND SAVINGS BANK, Plaintiff,

### v.

### Christopher C. EVANGELISTA, Defendant.

**Bankruptcy No. 83 00001.**
**Adv. No. 83 0037.**

United States Bankruptcy Court,
N.D. New York.

Feb. 10, 1984.

As Amended Feb. 15, 1984.

Fitzgerald, Taylor & Pomeroy, Robert T. Jewett, Cortland, N.Y., for plaintiff; Donald C. Armstrong, of counsel.

MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

LEON J. MARKETOS, Bankruptcy Judge.

In this adversary proceeding, the Cortland Savings Bank (hereinafter, the Bank) seeks to have declared nondischargeable a debt in the amount of $2,698.90, plus interest (hereainfter, the Debt) incurred by Christopher C. Evangelista (hereinafter, the Debtor). The Debt arose pursuant to a loan extended to the Debtor by the Bank. The Bank alleges the Debt is nondischargeable pursuant to § 523(a)(2) Title 11, U.S.C. (hereinafter, the Code). It is the position of the Bank that the Debtor obtained said loan under false pretenses, by false representations, or through actual fraud. In addition, the Bank alleges the Debtor obtained said loan by use of a written statement which was materially false. The Bank contends that at the time the Debtor applied for the loan, it relied on the Debt-

or's representation that a 1972 Ford Dump Truck (hereinafter, the Collateral), to be used as security for said loan, was unencumbered by any pre-existing liens. The Bank's position places heavy reliance on the loan installment and security agreements signed by the Debtor, both of which included a "Boiler Plate" type warranty whereby the signor warranted that the Collateral was free and clear of any pre-existing liens or encumbrances thereon. Subsequent thereto, after the Debtor defaulted, the Bank was confronted with a pre-existing lien when it attempted to execute its lien on the Collateral.

On January 3, 1983, the Debtor filed for relief pursuant to Chapter 7 of the Code. The Bank filed its complaint in the instant proceeding on February 10, 1983. A trial date was set to litigate said nondischargeability complaint. At the trial, the Bank appeared, however, there was no appearance made by the Debtor or his counsel.[1] The Bank submitted testimony and documentary evidence which it asserts establishes sufficient proof to permit the Court to determine the Debt nondischargeable.[2]

At the trial, the Bank submitted the following documentary evidence:

1. A loan application signed by the Debtor (Ex. 1);

2. A loan approval form issued to the Debtor (Ex. 2);

3. An installment note signed by the Debtor (Ex. 3);

4. A security agreement signed by the Debtor (Ex. 4);

5. A computer printout from the Bank setting forth the amount of the outstanding principal and interest due (Ex. 5); and

6. A U.C.C.–1 Financing Statement signed by the Debtor granting a lien on the Collateral to the Bank.

In addition to the above documentary evidence, the Bank submitted testimony of Geraldine Rote, an employee of the Bank, who conducted the initial interview with the Debtor. She stated that she filled out the loan application in accordance with the information provided by the Debtor, the Debtor signed said application and she forwarded it to the credit review department.

In response to inquiries directed from the Bench, the Witness testified that she never actually asked the Debtor whether the Collateral had any liens or encumbrances on it. She indicated further, that at the time the Debtor signed the loan application, she did not know, and, therefore, the Debtor did not know whether the Collateral would be required as a prerequisite for the Bank's approval of the loan. Finally, the witness stated that after the Bank approved the loan, she prepared the installment payment and security documents for the Debtor. She testified that at the time the Debtor signed these documents, she did not expressly point out the existence of the "Boiler Plate" type warranty provided on both documents.

The Bank also proffered testimony of Charles Bowman, who stated that, in his capacity as Bank President, he only gets involved with loan problems after a loan "goes bad". He stated that he reviewed the Debtor's application after the Credit Committee approved the loan.[3] Further, the Witness stated that the Bank relies on the information provided in the loan application, credit reports and independent verification of the loan application when deciding whether to approve a loan request. Furthermore, the Witness stated he was unaware of whether the Bank conducted a title search in regard to existing liens on

---

**1.** The attorney for the Bank telephoned the Court two days prior to the trial and indicated the Debtor advised him, through his attorney, that there would be no appearance at the trial, as the Debtor would not oppose the Bank's requested relief.

**2.** Rule 31 of the Local Rules of Bankruptcy Practice for the Northern District of New York provides that, unless an evidentiary hearing is

directed, the court shall direct entry of judgment pursuant to Bankruptcy Rule of Procedure 7055. It is the rule of the Court that no default may be entered in a dischargeability case without an evidentiary hearing.

**3.** The testimony is unclear as to whether the Witness reviewed the Debtor's loan application before or after the money was actually issued to the Debtor.

the Collateral at the time the loan was approved.

## DISCUSSION

The Bank alleges the Debtor's conduct in obtaining said loan constitutes a violation of Code § 523(a)(2). Said section encompasses two subsections, parts A and B, which provide, in pertinent part, as follows:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for obtaining money, property, services, or an extension, ... of credit, by—

(A) false pretenses, a false representation, or actual fraud, ...: or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with *intent to deceive;* (Emphasis added).

A creditor who seeks to have a debt determined nondischargeable has the burden of proving each element of its claim by a showing of clear and convincing evidence. *In re Magnusson,* 14 B.R. 662, 667 (Bankr. N.D.N.Y.1981); *In re Rodriguez,* 29 B.R. 537, 539 (Bankr.E.D.N.Y.1983). Therefore, for the Bank to prevail on its assertions, it must demonstrate, by clear and convincing evidence, the required elements of proof in regard to either Code § 523(a)(2)(A) or (B). For the reasons set forth herein, the Court holds the Bank has failed to satisfy its burden of proof in the instant proceeding.

■ For a debt to be determined nondischargeable pursuant to Code § 523(a)(2)(A), the following elements must be demonstrated by a Creditor:

1. The debtor made a representation to the creditor;

2. Said representation was in fact false;

3. The debtor knowingly and fraudulently made said representation with intent and purpose to deceive. The debtor's act must involve moral turpitude or intentional wrong. Fraud implied in law which may exist without the imputation of bad faith is insufficient; and

4. The creditor relied on the misrepresentation to its detriment.

*In re Greenblatt,* 8 B.R. 994, 997 (Bankr.E. D.N.Y.1981); *Matter of Weinstein,* 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983).

■ Intent to deceive is an inherent element of a cause of action alleged under Code § 523(a)(2)(A). *Id.; See* 3 *Collier on Bankruptcy* ¶ 523.08(4) at 523.41 (15th Ed. 1983). Consequently, for the Bank to prevail in regard to its claim under § 523(a)(2)(A), it must affirmatively appear, based on the evidence presented, that the Debtor's representations to the Bank were made knowingly and with fraudulent intent.

■ In regard to the Bank's second cause of action premised under Code § 523(a)(2)(B), intent to deceive is explicitly made an element of Code § 523(a)(2)(B) pursuant to subsection (iv). *Supra.* Therefore, the Bank must demonstrate the Debtor's false representation involved actual intent to defraud under Code § 523(a)(2)(B). Finally, in regard to proving intentional fraud under either subsection, a mere showing that the representation is incorrect in fact is insufficient. *Collier on Bankruptcy, Supra* at § 523.-09(2)(A) at 523–57.

■ A review of the evidence submitted at the trial establishes the Bank failed to satisfy its burden of proof in regard to demonstrating intentional fraud or deceit on the part of the Debtor. Essentially, the Bank makes its case in reliance on the "Boiler Plate" type warranty provided on the installment and security documents signed by the Debtor. Although, as previously mentioned, the warranty indicates that the signor covenants clear title in regard to the Collateral, no proof was submitted to demonstrate the Debtor intended

to mislead the Bank when he signed said documents.

The Bank failed to prove the Debtor was even aware of the existence of this provision when he signed the documents. Further, the testimony of Geraldine Rote established that she failed to directly ask the Debtor whether there were any existing liens on the Collateral at either the initial interview or at the subsequent meeting when the Debtor signed the loan and security documents. Moreover, her testimony established that neither she nor the Debtor knew, at the time of the initial interview, whether the Collateral was required for the Bank to approve said loan. Finally, her testimony suggested the Debtor did not even read the "Boiler Plate" provision before signing the installment and security documents.

The testimony of Charles Bowman is not probative nor helpful in regard to demonstrating the Debtor's intent at the time he signed said documents. As he indicated, he did not get involved with the Debtor's application until some time subsequent to the actual loan approval.

The testimony of these witnesses combined with the submitted documentary evidence fails to establish the Debtor actually intended to defraud the Bank.[4] In fact, if anything, the testimony indicates that the Debtor was unaware the Bank would place any reliance on the warranty contained in the loan documents.[5] In view of these facts and the fact that no Bank witness actually asked the Debtor if the Collateral was unencumbered, the Bank has failed its heightened burden of proof under both Code § 523(a)(2)(A) and (B). The Debt is determined to be dischargeable.

Based on the foregoing, and in accordance with the above findings of fact and conclusions of law, it is hereby

ORDERED that the Debt owed by the Debtor to the Bank, be and the same is hereby determined to be dischargeable and the complaint is dismissed without costs.

---

4. The Bank also failed to prove in a clear and convincing manner its actual reliance on clear title to the Collateral at the time it distributed the funds to the Debtor.

5. It appears that the Bank could have alleviated this entire proceeding if it merely conducted a title search in regard to encumbrances on the Collateral prior to the time it approved the Debtor's loan request.