In re Cathy B. SARKIN, a/k/a Cathy Sarkin and Beth C. Sarkin, Debtor.

**KEY BANK OF CENTRAL NEW YORK, Plaintiff,**

v.

**Cathy B. SARKIN, a/k/a Cathy Sarkin and Beth C. Sarkin, Defendant.**

Bankruptcy No. 83–00983.
Adv. No. 83–0231.

United States Bankruptcy Court,
N.D. New York.

Oct. 15, 1984.

---

Milton J. Crystal, Syracuse, N.Y., for plaintiff.

Louis J. Goode, N. Syracuse, N.Y., for defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

LEON J. MARKETOS, Bankruptcy Judge.

The instant adversary proceeding filed by Key Bank of Central New York (hereinafter, the Bank) against Cathy B. Sarkin (hereinafter, the Debtor) requests the Court determine a debt owed the Bank by the Debtor nondischargeable. The gravamen of the Bank's position is that the Debtor obtained a credit card under false pretenses and with the intent to defraud the Bank by purchasing items on credit although the Debtor had no intent to repay such debts.

The Court held a trial on April 2, 1984 to allow the parties to submit their proof. At the trial, the Bank appeared through its attorney, however, although the attorney for the Debtor appeared, the Debtor failed to appear at the proceeding.[1] The Bank offered testimony and documentary evidence. The Debtor submitted no evidence whatsoever to dispute the position of the Bank. As the Bank still must satisfy its burden of proof, the Court makes the following findings of fact:

On September 7, 1983, the Debtor commenced a Chapter 7 proceeding pursuant to Title 11, U.S.C. (hereinafter, the Code). Thereafter, the Bank filed the instant nondischargeability action against the Debtor.

Prior to the Debtor's petition, she made application, on February 8, 1977, to the

---

1. When questioned by the Court as to why Debtor failed to appear, Debtor's attorney stated that Debtor is on public assistance, had no means of transportation, and that Debtor's attorney did not want to travel to Dewitt to pick her up.

Bank requesting the issuance of a Master Charge credit card (hereinafter, the Card) with a credit line of $300.00. She met with John Stone, the Dewitt Branch Manager for the Bank. They discussed the application including the credit terms.

Said application was approved on February 9, 1977 and the Card was subsequently mailed to the Debtor. Along with the Card, the Debtor received information explaining the terms of the agreement and the limitations imposed by the $300.00 credit line.

Immediately after the Debtor obtained the Card, she commenced using it. The Debtor made her first charge on February 18, 1977; by March 5, 1977, she had exceeded her $300.00 credit limit. On March 25, 1977, the Bank sent a certified letter, which was received and signed for by the Debtor on March 28, 1977, requesting the return and surrender of the Card. Further, the letter indicated the Debtor was no longer authorized to use the Card.

The Debtor continued to use the Card thereafter and did not surrender the Card until April 28, 1977.

Apparently, almost immediately after the Debtor obtained the Card, she left her employment which was at Youth Town Shoes, a comany owned and operated by Debtor's parents. Further, Debtor spent some time in North Charles, South Carolina as there are numerous Card charges incurred from merchants in South Carolina.

The Debtor made one payment on the account of $100.00 during April 1977. The total charges incurred by the Debtor up until she was notified to return the Card was $751.27. The amount charged thereafter, until Debtor surrendered the Card, totalled $740.87.

On October 30, 1978, the Bank, through its attorneys, obtained a Judgment against the Debtor entered in the City Court of Syracuse, New York in the amount of $1,682.83. Said Judgment was docketed in the office of the Clerk of the County of Onondaga on October 31, 1978.

## DISCUSSION

It is the position of the Bank that the Debtor's actions with regard to the charges and nonpayment on the Card constitute an exception to discharge, apparently, within the provisions of Code § 523(a)(2)(A). This section provides, in pertinent part, as follows:

(a) A discharge under section 727, ... does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for obtaining money, property, services, or an extension, ... of credit by,—

(A) false pretenses, a false representation, or actual fraud, ...

■ A creditor who petitions to have a debt determined nondischargeable has the burden of proving each element of its claim by a showing of clear and convincing evidence. *In re Magnusson*, 14 B.R. 662, 667 (Bankr.W.D.N.Y.1981); *In re Rodriguez*, 29 B.R. 537, 539 (Bankr.E.D.N.Y.1983). Therefore, for the Bank to prevail on the instant adversary, it must demonstrate each element of Code § 523(a)(2)(A) by clear and convincing evidence.

■ For a debt to be held nondischargeable under Code § 523(a)(2)(A), the Bank must demonstrate the following:

1. The Debtor made a false representation to the Bank;

2. The Debtor knowingly and fraudulently made said representation with the intent and purpose to deceive. The Debtor's act must involve moral turpitude or intentional wrong. Fraud implied in law which may exist without the imputation of bad faith is insufficient; and

3. The Bank reasonably relied on the misrepresentation to its detriment.

*In re Greenblatt*, 8 B.R. 994, 997 (Bankr.E.D.N.Y.1981); *Matter of Weinstein*, 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983).

■ The question of intent to deceive or defraud is a question of fact. *In re Nelson*, 561 F.2d 1342, 1347 (9th Cir.1977). Further, "(t)he ultimate facts required to make ... [§ 523(a)(2)(A)] operative must, ... be inferred in most instances ... since

they involve a conclusion as to the state of mind of the maker of the representation." *In re Falk of Bethlehem*, 3 B.R. 266, 275 (Bankr.D.N.J.1980). To infer fraudulent intent, courts invoke a "totality of circumstances" approach. *In re Holcombe*, 23 B.R. 590, 592 (Bankr.E.D.Tenn.1982); *Matter of Granovetter*, 29 B.R. 631, 639 (Bankr.E.D.N.Y.1983).

Based on the facts as previously herein set forth, the Court finds the Bank has satisfied its heightened standard of proof as it is clear from the actions of the Debtor that she never had any intentions of repaying the charges incurred on the Card. Support for the position of the Court is derived, in part, from the fact that in less than one month from the date she received the Card, the Debtor exceeded her credit limit, and Debtor continued to use the card. Further, Debtor refused to surrender the Card and used it for almost one full month after receipt of the Bank's demand to surrender the Card. Finally, Debtor made only one payment on the charges due for her use of the Card.

Based on the foregoing, therefore, it is

ORDERED that the Debtor's debt owed to the Bank, be and the same is hereby deemed nondischargeable, pursuant to Code § 523(a)(2)(A).