**In re Kathleen A. SWEENEY, Debtor.**

**ITT FINANCIAL SERVICES, INC., Plaintiff,**

v.

**Kathleen A. SWEENEY, Defendant.**

**Bankruptcy No. 84–00802.**

**Adv. No. 84–0143.**

United States Bankruptcy Court, N.D. New York.

June 7, 1985.

Granito & Sondej, Liverpool, N.Y., for plaintiff; Thad F. Sondej, of counsel.

Manheim & Manheim, P.C., Syracuse, N.Y., for defendant; Michael A. Manheim, of counsel.

### MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

LEON J. MARKETOS, Bankruptcy Judge.

ITT Financial Services, Inc. (hereinafter, Plaintiff), filed the instant dischargeability complaint against Kathleen A. Sweeney (hereinafter, Debtor), requesting the Court determine a debt owed Plaintiff by Debtor in the amount of $1,938.00 nondischargeable pursuant to § 523(a)(2)(A) and (B) of Title 11, U.S.C. (hereinafter, the Code). Plaintiff asserts the Debtor obtained this $1,938.00 loan through a false representation that her automobile, which was to be taken by Plaintiff as security, was free and clear of all third party liens. In addition, Plaintiff avers Debtor intentionally misrepresented the amount of her total outstanding liabilities.

Debtor filed an answer which controverts the pertinent allegations in the complaint. Further, Debtor counterclaims asserting Plaintiff was fully aware of the third party lien against the automobile and that the instant action was brought in a malicious and reckless manner. Debtor requests attorney fees incurred in defending this allegedly frivolous action.

The Court held a hearing to allow the parties to submit their respective proofs. Based on the evidence and testimony adduced at trial, the Court makes the following findings of fact:

On May 15, 1984, Debtor contacted Plaintiff regarding a loan. Plaintiff's agent, Mark Firth (hereinafter, Firth), took the necessary information over the telephone to complete the application (Exhibit 2). Plaintiff received the loan proceeds on the same day the application was made. When Debtor came to Plaintiff's place of business to pick up the funds, Firth inadvertently omitted obtaining Debtor's signature on the application; it was never signed by Debtor.

Firth explained to Debtor, apparently during their telephone discussion, that in order to receive the loan, she would have to pledge some security. Exhibit 2 lists an automobile, a 1978 Chrysler LeBaron and it indicates the automobile is "free and clear" of liens. Moreover, the application lists a $2,570.00 debt owed to Lincoln First Bank, $764.00 owed to Mastercard and $25.03 due Sears. In actuality, Lincoln First Bank held a first lien against the Debtor's automobile to secure repayment of the $2,570.00 debt.

How Firth came upon the information that the Debtor's automobile was free and clear of liens is subject to dispute between the parties. Firth testified that he asked Debtor if the automobile was free of liens and Debtor responded "yes". In addition, Firth testified he asked Debtor if she held title to the automobile in her name alone, to which Debtor replied "yes".

Firth also testified that he asked Debtor to bring the certificate of title to him when she came to pick up the loan but that she failed to produce it. Firth stated Debtor told him the title was in a safety deposit box at the bank and that she would bring the title to him the next day. Debtor never delivered the title to Plaintiff.

Firth testified further that without taking a first lien on the automobile, the loan would not have been approved. Finally, Firth testified that he tried to call Debtor after she did not deliver the title, but that he was thwarted by a phone answering machine.

Debtor's testimony was identical to Firth's except that she asserts she informed Firth there was a first lien on the automobile and that Firth told her it would be "no problem". She stated further that as her husband was a co-signer on the Lincoln Bank loan, he refused to allow her to surrender the title to Plaintiff.

Debtor stated further that her husband sold the automobile at the end of July 1984 and used the proceeds to pay, in part, the Lincoln Bank loan. In addition, she stated the first time she was contacted by Plaintiff regarding the loan was in September 1984.

Debtor testified she cashed the loan check on May 16, 1984, the day after receiving the loan, but that she did not sign the automobile over to her husband until July 1984. Debtor was questioned on cross-examination as to whether she transferred title ownership to her husband on May 16, 1984; she emphatically denied this.

A TRW financial report was obtained by Plaintiff (Exhibit 5) which lists a credit history for the Debtor. Listed on the report is a debt owed Lincoln Bank in the amount of $3,600.00. Alongside this is the following: "SEC", which apparently indicates the debt is secured by some form of collateral. However, the report does not set forth any collateral description or identification. Firth stated that he did not probe this further as he had previously asked Debtor whether the automobile was encumbered by any liens and she informed him that no liens were against the automobile.

At the close of the testimony, Plaintiff's attorney requested permission to submit a

certified copy of the certificate of title to Debtor's automobile obtained from a New York State Department of Motor Vehicles search, based on the grounds that it would show the Debtor transferred title to the automobile to her husband on May 16, 1984, the day after she received the loan from Plaintiff.

Plaintiff received the Court's authorization and submitted same to the Court for review. The certificate shows that contrary to Debtor's testimony, she in fact transferred ownership of the automobile to her husband on May 16, 1984, rather than the purported July 1984 transfer date.

Debtor's attorney submitted a letter responding to the submission of the title certificate objecting to same on relevancy grounds. Essentially, Debtor contends that as the alleged security, i.e., the automobile, was already pledged to Lincoln First Bank, it was worthless to Plaintiff. Further, Debtor asserts that when she testified to the July 1984 transfer of the automobile, she was referring to a third party, not her husband. Finally, she avers that as she informed Firth there was a lien against the automobile at the time of the loan, the Plaintiff cannot now allege it was unaware of its existence.

## DISCUSSION

Preliminarily, the Court is faced with the problem that a substantial portion of Plaintiff's case is based on an *unsigned* credit application (Exhibit 2). However, the Court finds the surrounding circumstances and the testimony of Debtor herself sufficient to allow the Court to use the Exhibit as evidence.

For a debt to be determined nondischargeable, the Plaintiff must prove each element of its claim by a showing of clear and convincing evidence. *In re Magnusson*, 14 B.R. 662, 667 (Bankr.N.D.N.Y. 1981); *In re Rodriguez*, 29 B.R. 537, 539 (Bankr.E.D.N.Y.1983). This heightened burden is difficult for a creditor to prove; however, in the instant proceeding, for the reasons as set forth herein, the Court finds Plaintiff sustained its burden of proof to make the instant debt nondischargeable under both Code § 523(a)(2)(A) and (B).

The required elements which must be shown by Plaintiff under § 523(a)(2)(A) are:

1. The Debtor made a false representation to the Plaintiff;

2. The Debtor made this false representation knowingly and fraudulently with the intent and purpose to deceive. Bad faith must be shown which necessarily involves moral turpitude; and

3. The Plaintiff relied on the misrepresentation to its detriment.

*In re Greenblatt*, 8 B.R. 994, 997 (Bankr.E. D.N.Y.1981); *Matter of Weinstein*, 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983).

With regard to the Plaintiff's alternative cause of action under Code § 523(a)(2)(B), intent to deceive is explicitly made an element required to be shown. Code § 523(a)(2)(B)(iv).

A review of the evidence in this proceeding suggests the Debtor's credibility is questionable at best. The fact that Debtor, only one day after receiving the loan from Plaintiff, transferred ownership of the automobile to her husband, supports Plaintiff's position that she intended to defraud it. In addition, the Court finds that when Firth asked Debtor whether the automobile was subject to any liens, the Debtor responded that the automobile was clear.

Debtor's position that whether she transferred ownership of the automobile to her husband one day after the loan is irrelevant because there was no excess equity after Lincoln Bank's first lien, is unacceptable and known in the vernacular as "bootstrapping". Further, although Debtor attempts to minimize the importance of her testimony that she transferred the automobile to a *third* party in July 1984, this rationale is wholly unpersuasive, as Debtor was repeatedly questioned on cross-examination whether she transferred the automobile to her *husband* on May 16, 1984, to which she replied, "no".

The Court had some problem with the final hurdle of § 523(a)(2)(A), i.e., the Plaintiff's detrimental reliance on the misrepresentation. The Court is somewhat dismayed at the lax attitude of Plaintiff in

issuing loans of the type in this proceeding. In the present case, Plaintiff received most of Debtor's pertinent financial information over the telephone. While the Court is cognizant of modern banking technology, it must emphasize that the current lax financial attitudes may in the long run mitigate against a creditor in a case similar to the one currently before the Court. For example, in the present case, the TRW report clearly lists the Lincoln Bank obligation as secured. In this case, as the Court finds Firth's testimony most credible, Plaintiff prevailed even though the Court is somewhat concerned by Plaintiff's failure to investigate this apparent discrepancy further.

Based on the foregoing, the Plaintiff's request to have the debt owed by Debtor to Plaintiff in the amount $1,938.00 determined nondischargeable, be and the same, is hereby granted.