BRIGADIER HOMES & U.S. Home
Acceptance Corp., Plaintiffs,

v.

Dello D. HERT, d/b/a Rosewood
Homes, Defendant.

Bankruptcy Nos. 85–9027, 85–9028
and 84–07137.

United States Bankruptcy Court,
N.D. Florida.

Dec. 14, 1987.

William C. Owen, Tallahassee, Fla., for Brigadier Homes.

Frank E. Sheffield, Tallahassee, Fla., for Dello D. Hert.

## MEMORANDUM OPINION AND ORDER

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

THIS MATTER came on to be heard upon the respective complaints to determine dischargeability of specific debts pursuant to Section 523(a)(2)(B) of the Bankruptcy Code. The afore-styled civil actions were consolidated for purposes of trial and remain so consolidated for this memorandum opinion and order.

Upon review of the record, argument of counsel, and evidence adduced at trial, the Court makes the following findings of fact and conclusions of law: Brigadier Homes ("Brigadier") is a manufacturer and seller of mobile homes. U.S. Home Acceptance Corporation ("U.S. Homes") is a floor plan financier of mobile homes and the corporate parent of Brigadier. In October, 1983, after noting the defendant's salesmanship ability, a representative of Brigadier approached the defendant, Dello Hert d/b/a Rosewood Homes, ("Hert") to discuss Hert's entering into an exclusive dealership for the sale of Brigadier mobile homes. In furtherance thereof, on October 31, 1983, Hert made application for and was accepted as an "exclusive Brigadier Homes dealership". As a part of the arrangement U.S. Homes and Hert concurrently entered into an agreement giving U.S. Homes security in certain inventory and proceeds thereof in exchange for its extending wholesale floor plan financing to Hert.

Additionally Hert personally guaranteed any indebtedness incurred as a result of this dealership arrangement between the parties. Thereafter, Brigadier Homes sold several mobile home units to Hert for marketing. As part of the purchase and sale agreement between Brigadier and Hert, Brigadier advanced cash rebates to Hert for the subject units which rebates were refundable to Brigadier if Hert were unable to obtain a retail sale or if the units did not clear wholesale financing by U.S. Homes prior to any repurchase of the units by Brigadier.

Thereafter Hert defaulted under the October 31, 1983, security agreement and U.S. Homes repossessed the mobile home units incurring costs of $7,047.00. Interest due and owing at that time was $22,904.41. Brigadier Homes was required to repurchase the homes from U.S. Homes and became entitled under its agreement with Hert to a remittance of its rebate advances. The debts thus incurred to these plaintiffs were never paid by Hert. On December 7, 1984, Hert filed a Chapter 7 bankruptcy case and listed plaintiffs as creditors. Brigadier Homes and U.S. Homes then filed the within complaints to determine the debts due them to be non-dischargeable.

The plaintiffs allege that on October 15, 1983, Hert submitted to them a financial statement dated July 31, 1983, for the purpose of inducing plaintiffs to enter into the wholesale floor plan arrangement with Hert; that at the time Hert submitted the financial statement, he knew it contained materially false information; that this false information was submitted by Hert with the specific intention and purpose of deceiving plaintiffs and to induce them to enter into the respective financing and contractual arrangements that Brigadier and U.S. Homes relied upon this false financial statement in approving Hert's October 31, 1983, application and entering into the arrangements with him; and finally, that they sustained damages as a result of Hert's breach of the financial and contractual arrangements. Brigadier and U.S. Homes state that they would not have entered into these arrangements and suffered

the subject damages had they known Hert's true financial condition. They thus contend that the respective debts incurred by Hert to them are non-dischargeable pursuant to § 523(a)(2)(B).

Hert challenges the plaintiffs' ability to establish the requisite elements of § 523(a)(2)(B), to wit: that the financial statement was materially false; that the plaintiffs reasonably relied upon it when entering into these financial and contractual arrangements; and that he caused the statement to be made or published with the intent to deceive the plaintiffs.

As to the material falsity of the financial statement, the evidence establishes the following. The statement reflected that Hert owned industrial property in Indiana worth Three Hundred and Thirty Thousand ($330,000.00) dollars. Yet the testimony of Hert was that when he purchased the property, the sellers advised him that realistically, he would be able to obtain no more than $100,000.00 for the property, and this, only if liberal financing were provided. Hert made no effort to verify the accuracy of the representations made to him by the sellers prior to his inclusion of the property on his financial statement.

Within the following year the property was sold by Hert for only $15,000.00; this resulted in a misrepresentation on his financing statement of at least $230,000.00 of inflated value on that parcel of property. The statement further reflected that Hert owned a residence in California valued at $182,000.00. In actuality, the residence was owned jointly with Hert's wife, his share being ½, and thus even assuming the accuracy of Hert's valuation, his share of the property value could not have exceeded $91,000.00.

Hert claims that he believed the statement to be true at the time he prepared it and he gave it to Brigadier without reviewing it for accuracy on the later date. Even if not proven to be knowingly false at the time it was filled out on July 31, 1983, Hert had acquired knowledge with regard to the true value of the Indiana property by the time the statement was "published" by

its submission to plaintiffs on October 15, 1983. Hert was at that time aware of the over-statement of value, yet made no attempt to amend the two and one-half month old financial statement or to disclose to the plaintiffs the misrepresentations contained therein. It is clear that the financial statement was likewise materially false regarding Hert's sole ownership of the California property. *In re Rickey*, 8 B.R. 860 (Bkrtcy.M.D.Fla.1981). Hert listed his net worth as $750,000.00. The major components of this claimed net worth were these two pieces of property, representing artificially inflated values of $321,000.00 at a minimum. These misstatements of property value and ownership interest constitute materially false statements in writing pursuant to § 523(a)(2)(B)(i). *See, In re Bonanza*, 43 B.R. 570, 575 (Bkrtcy.S.D.Fla. 1984); *In re Rickey, supra* at 862.

As to the plaintiffs' reliance *vel non* on the false financial statement, Hert contends that they entered into these arrangements with him based solely on his past performance as a successful salesman of Brigadier Mobile Homes; that they carelessly failed to obtain supportive documentation for the personal financial statement, did not request a business financial statement, or six months of business statements, did not pursue the compilation report which was to have been attached to the statement, and could not have reasonably relied on a financial statement which wasn't even audited. Hert contends that submission of the financial statement was a mere formality and that the plaintiffs would have given him the exclusive dealership and financing package regardless of his personal financial condition. This Court finds evidence to the contrary. The plaintiffs requested current information from Hert, and attempted to verify his financial standing with certain of his suppliers. They did not require an audited statement but rather one which had been prepared by a C.P.A. who does not attest to the truthfulness of the statement. The debtor Hert was a successful businessman who could be expected to provide accurate information and know the consequences of

inaccurate information. This arrangement between the parties entailed major floor plan financing and was necessarily dependent upon the credit-worthiness of Hert. His successful past salesmanship may have gained the attention of the plaintiffs but this Court finds that the financial statement was a significant factor in the approval of the exclusive dealership and the extensions of credit that accompanied it. Plaintiffs' reliance upon the statements contained in that financial statement is found to have been reasonable.

 The element of intent must finally be addressed. Intent may be inferred from the surrounding circumstances. *In re Rickey, supra* at 863. Reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine to produce the inferrence of intent. *In re Bonanza, supra* at 574; *In re Rosenthal,* 29 B.R. 495 at 496, (Bkrtcy.S.D.Fla.1983). This Court finds Hert's nondisclosure of his limited ownership interest in the California property and his failure to amend the property value listed for the Indiana property upon learning of its over-inflated worth to be, at the least, reckless statements constituting willful misrepresentations.

Hert made these willful misrepresentations which he should have known would induce these parties to enter into the financial and contractual relationships with him, thus his intent to deceive the plaintiffs may be inferred. *Carini v. Matera,* 592 F.2d 378 (7th Cir.1979).

Brigadier and U.S. Homes having thus established all the necessary elements of Section 523(a)(2)(B), it is accordingly

ORDERED AND ADJUDGED that the debts found to be due and owing plaintiffs herein, be and they hereby are, declared to be non-dischargeable.