In re Donald James HOUK, fdba D. J. Steel Building Company, aka D. J. Company, and Black Hills Fashion-Lite Stone Company, all sole proprietorships, and Evalyn Lois Houk, Debtors.

FIRST NATIONAL BANK OF the BLACK HILLS, Robbinsdale Office, Rapid City, South Dakota, a National Banking Institution, Plaintiff,

v.

Donald James HOUK, Defendant.

Bankruptcy No. 581–00003.
Adv. No. 581–0022.

United States Bankruptcy Court, D. South Dakota.

Jan. 15, 1982.

J. Crisman Palmer, Gunderson & Palmer, Rapid City, S. D., for plaintiff.

Samuel W. Crabb, Rapid City, S. D., for defendant.

MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

Donald James Houk, hereinafter Debtor, is in a Chapter 7 bankruptcy. First National Bank of the Black Hills, hereinafter Creditor, filed a dischargeability of debt complaint against Debtor under the provisions of 11 U.S.C. § 523(a)(2)(B). Creditor alleges Debtor obtained a renewal of two promissory notes by submitting a false financial statement.

In a responsive pleading, Debtor alleges: 1) he paid Creditor money which was the inducement to renew the promissory note, 2) the financial statement was prepared by an officer of Creditor after the promissory notes were renewed; consequently, Creditor did not rely on the financial statement in granting a renewal, 3) the financial

statement was prepared hurriedly at Creditor's office, thereby depriving Debtor an opportunity to refer to his records, and 4) he did not intend to deceive Creditor by making the financial statement because he was not fully aware of his financial condition.

This Bankruptcy Court held a trial on the dispute, and the following Memorandum Decision is based upon the pleadings, exhibits, and memorandums of law.

## FINDINGS OF FACT

Debtor has been a customer of Creditor for approximately six years. During that period of time, Debtor had a checking account, a time savings certificate, and numerous loans with Creditor.

In January and April of 1980, Debtor renewed a note with Creditor and delivered an assignment of a time savings certificate as security for payment of the note. The note was in the amount of $17,038.00, payable on July 25, 1980.

On July 25, 1980, Debtor's time savings certificate in the amount of $10,600.60 was applied upon the note for $17,038.00. The balance remaining due on the note was $6,437.52. The $6,437.52 balance was combined with a note on a pickup truck in the amount of $3,090.88, and Debtor executed a new installment note in favor of Creditor in the amount of $10,415.54.

Also on July 25, 1980, a financial statement was prepared by Lee Groskopf, an officer of Creditor, and executed by Debtor (Creditor's Exhibit # 2). The data on the financial statement was obtained from a prior financial statement taken on March 22, 1979 (Creditor's Exhibit # 1), and from information given by Debtor. Debtor's financial statement manifests debts in the amount of $59,928.00.

Creditor's Exhibit # 3 is a comment sheet of Creditor regarding transactions with Debtor. It is Creditor's practice to keep a comment sheet as part of its business records. The entries on the comment sheet are specifically incorporated as part of this Court's Findings of Fact.

The entry of July 25, 1980, on the comment sheet indicates Mr. Groskopf was aware Debtor had judgments and liens against him. Mr. Groskopf testified he did not verify any data contained in the financial statement with a credit bureau or other sources. It took approximately thirty to forty minutes to fill out the financial statement.

Debtor is the owner and bookkeeper of a business. Debtor testified he did not recall all of his debts when Mr. Groskopf filled out the financial statement. Debtor filed bankruptcy on January 6, 1981. Debtor's bankruptcy schedules are incorporated as part of this Court's Findings of Fact. The bankruptcy schedules disclose debts and obligations in excess of $278,000.00.

Mr. Groskopf testified he would not have renewed Debtor's notes if the debts in the bankruptcy schedules had been included in Debtor's financial statement. Mr. Groskopf testified he relied upon prior dealings with Debtor and the information contained in Debtor's financial statement when he renewed Debtor's notes.

## CREDITOR'S ARGUMENTS

1. Debtor's financial statement of July 25, 1980, is materially false because it shows debts in the amount of $59,928.00 when his own testimony and bankruptcy schedules indicate debts in excess of $278,000.00.

2. Debtor's financial statement is a written record respecting his financial condition.

3. Creditor's reliance on Debtor's financial statement was reasonable because past transactions established a credit history.

4. Debtor intended to deceive Creditor when he did not list debts almost five times greater than those on his financial statement.

## DEBTOR'S ARGUMENTS

1. Creditor took Debtor's financial statement as a mere formality and did not reasonably rely on it because:

    a) it was prepared hurriedly after the promissory notes were renewed;

b) the inducement was a $7,000.00 payment on a previous promissory note;

c) Creditor's own testimony indicates it relied upon Debtor's previous transactions with Creditor; and

d) Creditor did not check credit bureaus or other sources.

2. Debtor did not intend to deceive Creditor by making the false financial statement because he was not fully aware of his financial condition.

## ISSUES

1. Did Debtor cause to be made a financial statement with intent to deceive Creditor in order to obtain a renewal of credit.

2. Did Creditor reasonably rely upon Debtor's financial statement when it gave Debtor a renewal of credit.

## CONCLUSIONS OF LAW

Creditor seeks a determination of the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(B). This section provides:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

. . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;".

This Bankruptcy Court holds it is undisputed that Debtor caused to be made a statement signed and adopted by him that is materially false respecting his financial condition.

## ISSUE—1

Creditor contends Debtor made a false financial statement with the intent to deceive Creditor in order to obtain a renewal of credit. Debtor maintains he did not intend to deceive Creditor because he was not fully aware of his financial condition.

Debtor's schedules disclose debts in excess of $278,000.00. Debtor's financial statement manifests debts in the amount of $59,928.00. Debtor testified he is the bookkeeper for his own business. Debtor also stated he could not recall all his debts when he filled out the financial statement with Mr. Groskopf.

After considering the cases cited in Creditor's brief, this Bankruptcy Court finds Debtor's defense of failure to remember his debts untenable because he is the owner and bookkeeper of his business. Being the owner of a business, coupled with being its bookkeeper, gives a debtor greater knowledge of his financial affairs. In this situation, a convenient forgetful memory is unacceptable, especially when the debt forgotten is approximately five times greater than the amount shown on Debtor's financial statement.

Debtor admits in testimony he made a false statement. This Bankruptcy Court finds an intent to deceive when a debtor shows a reckless disregard for the truth in disclosing all his debts on a financial statement.

For the aforementioned reasons, this Bankruptcy Court holds Debtor caused to be made a financial statement with intent to deceive Creditor.

## ISSUE—2

Creditor contends it reasonably relied upon Debtor's financial statement when it gave Debtor a renewal of credit. Debtor argues the circumstances of the transaction indicate the financial statement was taken as a mere formality.

The intent of Congress when it enacted the Bankruptcy Code was to give a debtor a "fresh start." A finding of nondischarge-

ability of a debt interferes with that "fresh start." Consequently, a debt should be excepted from discharge only when a creditor's loss is directly caused by the debtor's conduct.[1]

Issue 2 involves this Court deciding whether Creditor's reliance was "reasonable" under the circumstances.

For the following reasons, this Bankruptcy Court holds Creditor did not reasonably rely upon Debtor's financial statement when it gave Debtor a renewal of credit because the circumstances surrounding the renewal of credit indicate the financial statement was a mere formality.

First, this Court finds the financial statement was a mere formality because it was prepared hurriedly after the renewal of the installment note. Since the financial statement was prepared after the renewal of the note, it is evident Creditor did not rely upon the financial statement upon renewal. When deciding whether a creditor has reasonably relied upon a financial statement, this Court is concerned about "when" and "how" the financial statement was prepared and to what use the creditor makes of it.

Second, this Court finds the financial statement was a mere formality because testimony from Mr. Groskopf indicates previous transactions with Debtor were the basis for renewing the installment notes. During the six years Debtor was a customer of Creditor, he maintained checking and savings accounts and had numerous loans. This, coupled with Debtor's payment of $7,000.00 prior to renewal, indicates the financial statement was only one factor considered upon renewal. Hence, Creditor's reliance is not reasonable.

Third, this Court finds the financial statement was a mere formality and not reasonably relied upon because Creditor had actual knowlege of judgments and liens not listed on Debtor's financial statement. This is evident by an examination of Creditor's comment sheet. Creditor's apparent shock upon the discovery of judgments and liens on Debtor's bankruptcy schedules not listed on the financial statement becomes shallow when coupled with the following consecutive entries on the comment sheet:

"5–14–80 Deputy Sheriff, Bob Shutt of Pennington County Sheriffs (sic) Department called me today, May 14, 1980 in regard to Donald Houk DBA DJ manufacturing and stated that the lien that we filed on the truck of April 29, 1980 is null and void due to judgment leins (sic) filed april (sic) 25, 1980. Total amount of 24,-627 dollars to various creditors that Houk has done business with. Deputy (sic) Shutt mentioned that they would not release the truck until all 24 thousand dollars had been paid in full or satisfactory arrangements had been made with the creditors. No more credit should be extended to Mr. Houk or DJ because of the judgements and liens on record and all caution should be made in trying to work out the balance of our two loans. According to the Sheriff's Department even though our loan was made September (sic) of 1979, the lein (sic) was not perfected until April 29, 1980 and as a result our lein (sic) comes in behind the judgement filed 425."

"7–25–80 Today Don Houk was in and renewed the two loans that he has with us. We applied the proceeds from the CD for a total amount of $10,600.60 to the $17,038 note which left a balance of $6,437.52 and combined the $3,090.88 note that we had on the pickup into one payment amortized over eight years at $200 per month. Houk states that the truck that was confiscated on the lien was sold and he only owes approximately $6,000 on judgements and mechanics (sic) liens which he feels that he can clear up as soon as he gets some of the plans sold that he has listed. Don has mentioned that the $21,000 lawsuit that he has in Pierre should be settled in the next 30 days which he hopes to pay us off and the judgements and mechanics (sic) liens. I

1. "The Fraud Exception to Discharge Under the New Bankruptcy Code," 53 Am.Bankr.L.J. 253, 258 (1979).

asked Don what he thought was the biggest problem this past year to cause him to loose (sic) money and get into the trouble that he did. He stated that it was a lack of organization and a lack of control on trying to get too big with too many products. He has geared back his operation strictly into a sales effort wherea (sic) he sells steel sheds and then contracts out for someone to build the sheds or car washes. After visiting with Houk, I do feel that we should be okay on this loan even though we may have a fairly long workout. Houk stated that he does not and will not plan any type of bankruptcy since he has too many assets to go such a route. He did give me a valuation of his property; however, I do feel that some of them may be inflated quite a bit due to him purchasing the properties in 1979."

In this case, Creditor's reliance was not reasonable because Creditor ignored available information which disclosed Debtor's financial statement was false or incomplete. This Court cannot find Creditor's reliance reasonable when it knew Debtor had other liens and judgments and failed to investigate or verify Debtor's credit prior to renewal of credit.

In summation, a quote from Barry L. Zaretsky's law review article, which is cited earlier in this Memorandum Decision, clearly states this Court's perception of 11 U.S.C. § 523(a)(2)(B)(iii):

"Since the purpose of the exception is to protect creditors who are actually misled by fraudulent statements of debtors, the requirement that reliance be reasonable is sensible. A creditor who ignores available information, or who fails to seek information from sources that are commonly used, should not be heard to complain about the debtor's fraud. It is the creditor's failing to comport with normal business practices, not the debtor's fraud, that is the true cause of the loss."[2]

2. "The Fraud Exception to Discharge Under the New Bankruptcy Code," 53 Am.Bankr.L.J. 253, 262 (1979).

The foregoing shall constitute Findings of Fact and Conclusions of Law of this Court, and Attorney Crabb shall submit an order consistent with this Memorandum Decision.