**In re Christopher D. BEEHNER, Debtor.**

**Steven F. MILLER, Individually, and Individual Securities, Inc., Plaintiff,**

**v.**

**Christopher D. BEEHNER, Defendant.**

**Bankruptcy No. 83 00599.**
**Adv. No. 83 0150.**

United States Bankruptcy Court, N.D. New York.

May 2, 1984.

Michaels & Michaels, Syracuse, N.Y., for plaintiff; Martin M. Michaels, of counsel.

Christopher J. Chadick, Syracuse, N.Y., for debtor-defendant.

LEON J. MARKETOS, Bankruptcy Judge.

In this adversary proceeding, Steven F. Miller (hereinafter, the Plaintiff) seeks to have declared nondischargeable a debt in the amount of $16,235.91, plus interest, incurred by Christopher D. Beehner (hereinafter, the Debtor). Having heard testimony from the Plaintiff and Debtor, and having reviewed the pleadings, testimony and the evidence adduced at the trial, held on December 19, 1983, the Court makes the following:

## FINDINGS OF FACT

1. On May 18, 1983, the Debtor filed for liquidation relief from creditors pursuant to Chapter 7 of Title 11 U.S.C. (hereinafter, the Code). Thereafter, Plaintiff filed the instant adversary on July 12, 1983.

2. Plaintiff and Debtor became acquainted while both were employed at a company entitled "Anarin Microwave" (hereinafter, Anarin). Plaintiff, who was hired in approximately 1972, was an assistant to the president of Anarin, while the Debtor, who was hired in April 1980, was employed as a cost accountant. The parties met once a week as their job duties required them to work together on the company inventory.

3. Debtor is a graduate of the University of New Hampshire and holds a degree in accounting. He completed approximately sixty (60) accounting hours in order to obtain his degree. His salary at Anarin was $15,500.00 per annum. While employed at Anarin, Plaintiff taught the Debtor about trading stock options.

4. In March 1982, Plaintiff, after ten (10) years employment at Anarin, left Anarin, and started his own stock brokerage firm called "Individual Securities" (hereinafter, Securities). Securities was operated as a sole proprietorship out of the Syracuse area; it was part of a Long Island franchise operation. Plaintiff and Debtor maintained contact after Plaintiff's departure from Anarin. Debtor called Plaintiff on a daily basis to obtain price quotes for certain stock options or trades.

5. There was uncontradicted testimony of the Debtor that Plaintiff repeatedly asked Debtor to become employed as a broker for Securities. Debtor testified that Plaintiff asked Debtor to work for Securities as a broker on at least six (6) separate occasions. The Debtor states he initially refused Plaintiff's requests and informed Plaintiff he had minimal financial resources. However, after these repeated attempts, Debtor agreed, in November 1982, to become a broker for Securities.

6. As a prerequisite to commencing actual stock trading with Securities, the Debtor was required to furnish a signed financial disclosure statement. (Plaintiff's Exhibit #7). This disclosure statement was signed by the Debtor on November 5, 1982. The form was required to be submitted for approval to Dominick Investor Services (hereinafter, Dominick) located on Wall Street in New York City. Dominick was the firm utilized by Securities to make the actual stock trades.

7. There is sharply conflicting testimony as to how the disclosure statement was actually completed. Plaintiff testified that he completely filled out the form in about five (5) minutes, pursuant to information provided by the Debtor, before the Debtor signed the form. However, in contrast, Debtor testified the Plaintiff instructed him to sign the form first, which he did, and then Plaintiff thereafter, filled in the information which Dominick required in order to qualify Debtor as a trader.

8. The completed form was submitted to and processed by Dominick. In Dominick's usual course of business, it sent a copy of the disclosure form to the Debtor

requesting verification of any inaccuracies. (Plaintiff's Exhibit 2.) The form indicated the Debtor had $35,000.00 yearly employment income, $20,000.00 other yearly income, and a net worth of $80,000.00. Debtor testified that upon review of the form, although the notice requested Debtor to notify Dominick directly, the Debtor notified Plaintiff of the inaccuracies and the Plaintiff informed him the inaccuracies did not matter, and "that is what they [Dominick] want to see anyway". This testimony was firmly rebutted by the Plaintiff who denied ever being notified of any errors or misstatements on the financial disclosure form.

9. Plaintiff stated it was Securities' practice to not attempt to verify financial information provided by applicants if the size of the individual transactions to be made were less than $20,000.00. Debtor's individual transactions were always less than $20,000.00.

10. Debtor testified that although he did not have much money at the time the parties agreed to trade together, he stated he had "access" to money through his family and friends.

11. While both parties were still at Anarin, the Plaintiff hired the Debtor's superior at an annual salary of less than $20,-000.00. In response to a question propounded to Plaintiff on cross examination, the Plaintiff stated it did not strike him as "odd" that the Debtor could list $35,000.00 annual income on the disclosure statement, even though, while just recently at Anarin, Plaintiff had hired Debtor's superior at a much lower yearly salary. Plaintiff explained the apparent discrepancy by stating that he thought the Debtor was "moonlighting" at another job.

12. Plaintiff never asked Debtor to explain the $35,000.00 income figure. Plaintiff never contacted Anarin to attempt to verify Debtor's stated income. Plaintiff never inquired into the source of the Debtor's "other income" listed on the disclosure form at $20,000.00. Plaintiff did nothing to attempt to verify the information provided in the disclosure statement.

13. Plaintiff testified he relied on the disclosure statement when he decided to grant Debtor the right to trade options with Securities.

14. The parties entered into a series of stock option transactions. The plaintiff testified the Debtor bounced a check which was to be used to pay for the first trade. However, the Debtor subsequently submitted payment to Dominick. Debtor explained he failed to "transfer" the money quick enough. Thereafter, the subject debt arose from what the parties both testified to as the "Honeywell" trade. This trade occurred on April 25, 1983 and it consisted of two (2) parts totaling $16,235.91. After payment was not received in a timely fashion from the Debtor, Plaintiff notified him of the delinquency, but the Debtor assured him payment was forthcoming. In addition, the Plaintiff testified that the Debtor told him he mailed the check directly to Dominick. Debtor never made the payment and the Plaintiff was personally required to pay the $16,235.00 debt. Plaintiff testified the Debtor never told him he had no money, nor did Debtor allow Plaintiff an opportunity to mitigate damages by informing him that he could not pay. Plaintiff contends he learned for the first time that Debtor could not pay for the Honeywell trade nearly two (2) weeks after the original sale, on approximately May 9, 1983.

15. Plaintiff stated he did not liquidate the account, as per company rules on default, as he trusted the Debtor based on their "friendship".

16. The Debtor did not declare any of the $16,235.91 debt as a loss on his tax return for the year in question.

17. The Debtor filed a prior petition in bankruptcy on February 24, 1982, which was dismissed for failure to appear at his discharge hearing. This fact was unknown to Plaintiff at the time the parties started trading together. Plaintiff contends that if Debtor had informed him of this fact, he would not have extended Debtor the right to trade. On cross examination, however, the Plaintiff candidly admitted he never asked the Debtor if he had ever previously

filed bankruptcy. In addition, a review of the financial disclosure form demonstrates the absence of any inquiries into whether applicant had previously filed for bankruptcy.

## DISCUSSION

Plaintiff contends the instant debt should be determined non-dischargeable. However, the Court has reviewed his complaint and post-trial memorandum, and it appears Plaintiff has failed to cite any dispositive Code section under which the Court is to make its' determination. However, the Court gleans from the papers submitted that Plaintiff relies on Code Section 523(a)(2)(B) for relief. In the interest of justice, the Court will assume Plaintiff's position is premised on this section.

It is the position of the Plaintiff that he has satisfied his burden of proof under Section 523(a)(2)(B). Plaintiff asserts the evidence in this case establishes that Debtor intentionally and willfully provided false information which was relied on by Plaintiff when he extended Debtor the opportunity to trade options as a broker with Securities. Further, Plaintiff asserts that as Plaintiff is not a banking institution, he is held to a lesser standard in regard to requiring any affirmative verification of the information provided on the disclosure statement. Therefore, Plaintiff requests Debtor be denied discharge of the subject debt.

It is the position of the Debtor that Plaintiff's evidence fails to satisfy the heightened standard of review required in a non-dischargeability proceeding. Debtor asserts Plaintiff did not reasonably rely on the financial disclosure statement as Plaintiff had independent knowledge of the inaccuracies on the statement. In addition, Debtor asserts he did not actually fill out the form, but that Plaintiff filled it out so as to ensure Debtor would receive approval from Dominick. Debtor avers that Plaintiff was extremely aggressive in seeking Debtor's employment as Plaintiff was just starting out in his own business. Debtor contends Plaintiff repeatedly sought out Debtor even though Debtor told him he had

no money. It is Debtor's position that only after repeated solicitations from the Plaintiff was the Debtor persuaded to engage in trading against his better judgment. In effect, Debtor argues, both parties gambled, and both lost. Debtor requests the Court to hold the instant debt dischargeable.

Code Section 523(a)(2)(B), pertinently provides as follows:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

 \* \* \* \* \* \*

(2) for obtaining money, property, services, or an extension, ... of credit, by—

 \* \* \* \* \* \*

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive. (emphasis ours.)

A creditor who seeks to have a debt determined non-dischargeable has the burden of proving each element of his/her claim by a showing of clear and convincing evidence. *In re Magnusson*, 14 B.R. 662, 667 (Bankr.N.D.N.Y.1981); *In re Rodriguez*, 29 B.R. 537, 539 (Bankr.E.D.N.Y. 1983). Therefore, for Plaintiff to prevail on the instant adversary proceeding, he must demonstrate, by clear and convincing evidence, the required elements of Code Section 523(a)(2)(B). For the reasons as set forth herein, the Court holds the Plaintiff has failed his burden of proof.

For plaintiff to commence an action based on Code Section 523(a)(2)(B), the Court must make an initial determination as to who actually completed the financial disclosure statement. Therefore, the threshold issue in the present case is whether the information provided on the financial disclosure form was individually

supplied by Debtor or whether it was the product of a joint effort between the parties to ensure Debtor's approval by Dominick.

It is clear from the testimony at trial that Plaintiff was actively seeking a broker for his new company, that he sought out Debtor to discuss a brokerage arrangement, and that Plaintiff made the initial overtures to Debtor based not on anything represented by Debtor, but based on Plaintiff's own observations of the Debtor and his job performance while at Anarin.

■ The facts as established at trial demonstrate the instant case involves a situation whereby the parties collaterally agreed to jointly prepare the disclosure statement so as to ensure Debtor's approval by Dominick. The Court finds as fact that Plaintiff took an active part in arranging and deciding what financial figures and information went into the disclosure statement. The Court makes a determination that the Debtor signed the statement before it was completed, and then subsequent thereto, the Plaintiff and Debtor jointly determined which figures to supply on the form. This finding is supported by the fact that Plaintiff was highly aggressive in attempting to secure brokers for his recently established brokerage firm. Plaintiff asked Debtor to trade with Securities on at least six (6) separate occasions. In addition, further substantiation is provided from the fact that after the disclosure statement was sent back to Debtor for verification, Debtor informed Plaintiff of the misstatements and Plaintiff stated that there was nothing to worry about and that those figures were what Dominick wanted to see anyway.

Based on the present facts, Plaintiff cannot now petition this Court for relief when what really existed was a joint agreement between Plaintiff and Debtor to ensure the Debtor's approval by Dominick so as to permit Debtor to promptly commence employment as a broker with Securities.

Even if the Court determined the financial disclosure form was properly completed and, therefore, assuming elements one and two of Code Section 523(a)(2)(B) would be satisfied, the Court finds Plaintiff would still fail to prevail on the merits. The issue would thus become whether or not Plaintiff's reliance on the disclosure form was reasonable in accordance with subsection (iii) of Code Section 523(a)(2)(B).

The term reasonable is not self defining and courts have utilized a case-by-case approach to decide whether a creditor's reliance on a false financial statement was reasonable. One approach adopted to determine reasonableness is to ascertain whether the creditor knew from the outset that the financial statement was inaccurate. *In re Houk*, 17 B.R. 192, 195–96 (Bankr.D.S.D.1982). In addition, at least one court has determined that failure to verify information on a financial statement renders reliance on that statement unreasonable. *Matter of Breen*, 13 B.R. 965 (Bankr.S.D.Oh.1981). Finally, some courts have held that a creditor's refusal to recognize "red flags" which might have alerted the creditor to a debtor's inability to comply financially with the agreement, renders that creditor's subsequent reliance unreasonable. *Matter of Granovetter*, 29 B.R. 631 (Bankr.E.D.N.Y.1983.)

In the instant case, the facts present suggest the Plaintiff had independent prior knowledge of the inaccuracies on the disclosure statement. As noted above, in undisputed testimony, it was established that the Plaintiff, before he left Anarin, hired the Debtor's supervisor at a salary of less than $20,000.00. Further, the parties became "friends" while at Anarin and it is clear Plaintiff knew Debtor's station in life.[1] Therefore, it is unreasonable on the part of Plaintiff to accept the figure of $35,000.00 annual employment income on the disclosure form without any inquiry for verification. Plaintiff made no inquiry to the Debtor, nor did Plaintiff attempt to

1. Another factor considered by the Court was the fact that according to the testimony of the Plaintiff, the disclosure statement took only five (5) minutes to complete. This brief amount of time extended to processing the form on which the Plaintiff premises his case suggests less than reasonable reliance on the financial figures provided in the statement.

**270**

contact Anarin to verify Debtor's income. Even considering Plaintiff's explanation for the discrepancy, Plaintiff's action constitutes unreasonable reliance on the disclosure statement. In addition, this $35,000.00 income figure constitutes a "red flag" as referred to by the Court in *Granovetter, Id.* Finally, it was established as fact that Debtor encountered payment difficulties commencing from the inception of their trade relationship as Debtor bounced the first check issued to pay for the parties' first trade. Thus, Plaintiff cannot simply close his eyes to such warnings and, thereafter, allege reasonable reliance on the disclosure statement.

The Court is cognizant of Plaintiff's argument that he is not a banking institution and, therefore, should not be held to a strict verification duty of the disclosure statement as required by the *Breen* court, *supra.* However, even if the Court were to adopt Plaintiff's position, such a stance would not allow the Plaintiff to blindly rely on any information which was listed on the disclosure form. The failure of Plaintiff to take even routine precautions to investigate the Debtor's financial position demonstrates how little reliance Plaintiff based on the representations made in the disclosure statement. A review of the testimony in this case demonstrates clearly that Plaintiff relied on his own judgment, experience and observations to make a financial commitment to the Debtor.

Therefore, Plaintiff has not met the burden of proof required by Code Section 523(a)(2)(B), as he has failed to demonstrate his reliance on the disclosure statement was reasonable.

Based on the foregoing, the subject debt owed from Debtor to the Plaintiff, be and the same, is hereby determined to be dischargeable.

IT IS SO ORDERED.