In re Nina Lee CENTERS, f/k/a Nina Lee Cramer, Debtor.

RAILWAY EMPLOYEES' CREDIT UNION, Plaintiff,

v.

Nina Lee CENTERS, Defendant.

Bankruptcy No. 86–20664.

Adv. No. 86–0119.

United States Bankruptcy Court, D. Kansas.

May 28, 1987.

Patrick S. Bishop, Fourth & Judson, Fort Scott, Kan., for debtor/defendant.

Dennis E. Mitchell, Kansas City, Kan., for plaintiff.

Carl R. Clark, Mission, Kan., trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter came for trial on February 23 and on March 31, 1987, on the plaintiff's, Railway Employees' Credit Union, complaint to determine dischargeability of debt under section 523(a)(2)(B) and for judgment. The plaintiff appeared through counsel, Dennis E. Mitchell. The debtor-defendant, Nina Lee Centers, appeared through counsel, Patrick S. Bishop.

## FINDINGS OF FACT

Based on the testimony, the exhibits, and the stipulations of the parties, this Court finds as follows:

1. The Court has jurisdiction over the parties and the subject matter, and venue is proper.

2. The plaintiff, Railway Employees' Credit Union (hereinafter "credit union") is authorized to transact business in Kansas.

3. The debtor/defendant, Nina Lee Centers, is a resident of Fort Scott, Kansas.

4. Prior to February 19, 1985, Centers requested two loan applications from the credit union in order to refinance her automobile and pickup. The credit union mailed her the applications.

5. On February 19, 1985, Centers returned the two applications.

6. On the first application, Centers requested $3,100 in order to refinance her 1981 Volkswagen Rabbit (*See plaintiff's exhibit no. 1*). On the application, Centers indicated that Commerce Bank of Kansas had a lien on the vehicle in the amount of $3,100 and that she paid $204 per month on the loan.

7. On the second application, Centers requested $4,000 in order to refinance her 1982 Ford Courier pickup (*See plaintiff's exhibit no. 2*). On the application, Centers indicated that Cox Motor Company held a lien on the vehicle in the amount of $4,000 and that she paid $201 per month on the loan. In addition, Centers indicated that Eastern Kansas Financial Services also held a lien on the vehicle in the amount of $2,000 and that she paid $106 per month on the loan.

8. Juanita Sheehan was the loan officer handling the application for the credit union.

9. Upon receipt of the applications, Sheehan verified Centers' employment and income; verified the amounts owed to each lienholder; verified the fair market value of the vehicles by requiring Centers to obtain an appraisal, and by NADA valuation; obtained a credit report; compared the debts listed on the application to those reported in the credit report; determined Centers' debt ratio; and submitted all information received and computed to the credit union's "credit committee" for their review and disposition.

10. The credit committee decided to deny both applications on the basis that they could not loan as much as was needed to pay off the loans with the current lienholders. On February 26, 1985, the credit union sent Centers a "Statement of Refusal to Grant Loan" for each loan application (*See plaintiff's exhibit nos. 7 and 8*).

11. Subsequently, Centers and Sheehan discussed the reasons for denial of credit over the telephone. Sheehan indicated that Centers could receive the refinancing if she would reduce the amount owed on the vehicles and reapply for credit.

12. Centers reduced the amount owed to Commerce Bank on the Volkswagen to $2,650 and the amount owed on the pickup to $3,497.

13. On March 21, 1985, Centers submitted a second set of applications.

14. On the first applications, Centers requested $2,650 in order to refinance the 1981 Volkswagen. Centers indicated that Commerce Bank had a lien in the amount of $2,650.

15. On the second application, Centers requested $3,500 in order to refinance the 1982 Ford Courier pickup. Centers indicated that Cox Motor had a lien in the amount of $3,497. As for Eastern Kansas Financial Service, Centers only reported the debt as a "loan" in the amount of $1,900 without indicating their lien on the pickup.

16. Upon receipt of the new application, Sheehan followed the same procedure as she had the first time. She verified Centers' employment and income; verified the amounts owed to each lienholder listed on the new application; verified the fair market value of the vehicles; obtained a credit report; compared the credit report with the new application; determined Centers' debt ratio; and submitted all the information to the credit committee.

17. The credit committee approved the loans.

18. On April 15, 1985, Centers executed a promissory note and disclosure statement in the amount of $2,650 at 15% interest with 36 monthly payments of $94.44 commencing May 15, 1985. The note and disclosure statement also contained a security agreement in which Centers granted the credit union a security interest in the 1981 Volkswagen Rabbit (*See plaintiff's exhibit no. 13*).

19. In addition, Centers executed a second promissory note and disclosure statement in the amount of $3,500 at 15% interest with 36 monthly payments of $124.74 commencing May 15, 1985. The note and disclosure statement also contained a security agreement in which Centers granted the credit union a security interest in the 1982 Ford Courier pickup (*See plaintiff's exhibit no. 14*).

20. On May 2, 1985, the credit union mailed $2,650 to Commerce to pay off the Rabbit, and mailed $3,500 to Cox Motor Company to pay off the Ford Courier.

21. On May 7, 1985, the credit union received the title for the pickup from Cox Motor Company with a release of their lien. This title noted that Eastern Kansas still held a lien on the pickup.

22. On May 13, 1985, the credit union through its attorney notified Centers. The credit union asked Centers to either pay back the credit union or obtain a release from Eastern Kansas Financial Services. Centers refused to do so.

23. On May 7, 1986, Centers filed a petition for relief under Chapter 7 of Title 11 of the United States Code.

24. On September 3, 1986, the credit union filed a complaint to determine dischargeability of debt.

## CONCLUSIONS OF LAW

The credit union alleges that Centers obtained the refinancing of her vehicles by use of the second set of the false loan applications on March 21, 1985. Whereas, the first set of loan applications on February 19, 1985, indicated that Eastern Kansas Financial Services held a lien on the 1982 Ford Courier pickup, the second set of loan applications on March 21, 1985, failed to reveal the lien. Accordingly, the credit union requests this Court to find Centers' debt nondischargeable under section 523(a)(2)(B).

Under section 523(a)(2)(B), a debtor is not discharged from any debt:

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or publised with intent to deceive.

The credit union must prove the four elements listed in section 523(a)(2)(B) by clear and convincing evidence. *See In re Janes,* 51 B.R. 932, 935 (Bankr.D.Kan.1985).

The determination of this case comes down to the third element, reasonable reliance. The provision is explicit that the creditor must not only have relied on a false statement in writing, but the reliance must have been *reasonable.* 3 Collier on Bankruptcy ¶ 523.09[4] (15th ed. 1987).

This Court finds that the credit union *failed* to prove it reasonably relied on the second set of loan applications by clear and convincing evidence. The credit union must have or at least should have known of the second lien of Eastern Kansas Financial Services from the first set of loan applications. The first set indicated Eastern Kansas Financial Services' second lien on the pickup. A creditor's reliance is unreasonable if the creditor knows at the outset that the information listed on the financial statement is not accurate. *See In re Houk,* 17 B.R. 192 (Bankr.D.S.D.1982).

The Court notes that the credit union has tried to explain away any prior knowledge of the lien. The loan officer, Juanita Sheehan, testified that she did not recall the Eastern Kansas Financial Services lien at the time of the second set of applications due to the volume business conducted by her each month. Furthermore, she stated she could not review the first set of applications since they were forwarded to the credit committee and not located in the building. Finally, she testified that credit union policies required obtaining a new application with each loan request so as to insure the most current information and to avoid making loan decisions based upon outdated information.

However, under all the circumstances, this Court is not swayed by the credit union's explanation. The same loan officer, Juanita Sheehan, had reviewed the first applications only *one* month prior to the second set. Furthermore, she even called Eastern Kansas Financial Services with regard to the first loan application to find the payoff on the pickup. Finally, she kept in contact with Centers on the telephone throughout the intervening month concerning the refinancing. Under all the circumstances, this Court must find that credit union should have known at the outset that the information listed on the second set of applications was inaccurate. Accordingly, this Court finds that Centers' debt to the credit union is dischargeable.

One further note must be addressed. The credit union in its complaint alleges section 523(a)(2)(A) and section 523(a)(6) counts. This court finds that the above sections do not apply to this case.

IT IS THEREFORE, BY THE COURT, CONSIDERED AND ORDERED That the debt owed by the debtor/defendant, Nina Lee Centers, to the plaintiff, Railway Employees' Credit Union, be and the same is hereby discharged.

IT IS FURTHER, BY THE COURT, ORDERED That judgment be for the defend-

ant, Nina Lee Centers, and against the plaintiff, Railway Employees' Credit Union.